UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-61119-Civ-SCOLA

VSI SALES, LLC, a Pennsylvania limited
liability company,

      Plaintiff,

v.

ANTHONY DiSIMONE, an individual,

      Defendant.

_____/

## PLAINTIFF'S MOTION FOR PRELIMNARY INJUNCTION AND REQUEST FOR HEARING AND ARGUMENT

The Plaintiff, VSI SALES, LLC ("VSI"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. §§ 1116 and 1125 of the Lanham Act, and other applicable law hereby moves this Court for entry of a preliminary injunction against Defendant, ANTHONY DiSIMONE ("DiSimone"), enjoining DiSimone from using the name "VSI Sales, LLC" and any confusingly similar or deceptive variation of that name;  from continuing to falsely or misleadingly represent himself as being affiliated or associated with VSI; and from otherwise competing unfairly against VSI. As grounds for this motion, VSI incorporates the following memorandum of law.

## MEMORANDUM OF LAW

## STATEMENT OF FACTS

VSI is in the business of building and supplying tubular steel and aluminum structures, such as highway sign bridges and lighting poles. Compl. ¶ 6; Declaration of Robert Smook, executed on July 5, 2020, ¶6 (hereinafter cited to as "Smook Decl. ¶__").[1]

VSI was founded on or about July 25, 2005 and has been in the steel and aluminum structure business ever since. Smook Decl. ¶8. The company was founded by DiSimone and/or his wife Angela DiSimone. Smook Decl. ¶5. Angela DiSimone, however, owned 100% of the company. Smook Decl. ¶5.

On or about June 29, 2018, VSI and another company founded by the DiSimones and owned solely by Angela DiSimone, Structures USA, LLC ("Structures USA"), a Kentucky limited liability company, were sold to Nova Structures, Inc. ("Nova"), a Canadian company. Smook Decl. ¶9. The ownership was structured as follows: Nova and Angela DiSimone own 90% and 10%, respectively, of the holding company, Structures U.S., LLC, which in turn owns VSI and Structures USA. Smook Decl. ¶9.

In February 2020, the employment of DiSimone and his wife with both VSI and Structures USA was terminated for cause, including for misappropriation and breach of their fiduciary duties. Smook Decl. ¶11. Unbeknownst to VSI and its related companies, on November 16, 2018, DiSimone formed a company in Florida called Engineered Pole Structures, LLC ("Engineered Pole Structures"). Smook Decl. ¶12.

In his position as vice president, DiSimone received substantial compensation and benefits with the expectation that DiSimone's efforts would be devoted exclusively to the business of VSI

---

[1]      Mr. Smook's declaration and exhibits thereto are being filed herewith.

and Structures USA. Smook Decl. ¶10. VSI, however, discovered that DiSimone (along with his wife, who was the president of VSI) was using assets belonging to VSI (including VSI order forms featuring its logo and name), obtaining orders from VSI, and then diverting those orders and sales to their company, Engineered Pole Structures, as well as ordering materials and products from vendors for their side-business using VSI's logos and name. Smook Decl. ¶¶13-18.

In other words, as agents of Engineered Pole Structures and while still employed by VSI, DiSimone and his wife were using VSI logos, forms, name, and resources with the actual intention of misappropriating the orders and sales (once obtained) and the goodwill of VSI for their separate company and side-business and ultimately themselves. Engineered Pole Structures, as it turns out, was established to compete unfairly against VSI and to misappropriate VSI's customers and potential customers through DiSimone's executive position with VSI. Smook Decl. ¶20.

VSI discovered that after DiSimone's employment was terminated, he continued to use the "VSI Sales, LLC" name in a manner likely to mislead and misrepresent his continued affiliation with VSI and likely to misrepresent that his commercial activities are on behalf of and/or authorized by VSI. Smook Decl. ¶23.

On June 1, 2020, VSI discovered (by accident) that DiSimone intentionally had made the display name for his Engineered Pole Structures email address "Anthony J. DiSimone – VSI Sales, LLC" to solicit and conduct business using the goodwill and industry reputation of the "VSI Sales, LLC" name, despite the fact he was no longer affiliated with VSI and had no authorization to use the name or mark. Smook Decl. ¶24.

## ARGUMENT

Section 43(a) of the Lanham Act prohibits the use in interstate commerce of any "word, term, name, symbol or device, . . . or any false designation of origin . . . which is likely to cause

confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). The Lanham Act also grants federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a).

To support a preliminary injunction under the Lanham Act, a district court need not find that the evidence positively guarantees a final verdict in a plaintiff's favor, but instead, only must find that the evidence shows the following: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

Here, VSI should be granted preliminary injunctive relief because each of these four elements weighs in favor of VSI.

### 1. VSI WILL LIKELY SUCCEED ON THE MERITS OF ITS CLAIM UNDER 15 U.S.C. § 1125(a).

In order to state a claim for false designation of origin under the Lanham Act - 15 U.S.C. § 1125(a), the plaintiff must show that the defendant: "(1) used a designation; (2) in commerce; (3) in connection with goods or services; (4) where the 'designation [was] likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of defendant with another person, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person'; and (5) plaintiff suffered damaged [sic] as a result." *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 U.S. Dist. LEXIS 196869, at *30-31 (S.D. Fla.

Nov. 30, 2017) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:13 (4th ed. 2015)).

The first three elements of the underlying Lanham Act claim—which require DiSimone to have used the designation in commerce in connection with goods or services—are clearly evidenced by DiSimone intentionally making the display name for his Engineered Pole Structures email address "Anthony J. DiSimone – VSI Sales, LLC" to solicit and conduct business for Engineered Pole Structures, despite DiSimone's lack of affiliation with VSI and his lack of authorization to use the mark, which were clearly known to DiSimone.

The fourth element of the underlying Lanham Act claim—the likelihood of confusion or deception as to the origin or affiliation of the goods or services —also weighs heavily in favor of enjoining DiSimone from using the "VSI Sales, LLC" name. The Eleventh Circuit explained that when determining whether a likelihood of confusion exists, the court applies a multifactor test that takes the following factors into consideration:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010) (citing *Welding Servs. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007)).

However, "the district court should not determine whether a likelihood of confusion exists by merely computing whether a majority of the subsidiary facts indicates that such a likelihood exists. Rather, the district court must evaluate the weight to be accorded the individual subsidiary

facts and then make its ultimate fact decision." *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 n.17 (11th Cir. 1983).

> a.  **The strength of the "VSI Sales, LLC" name is strong.**

There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). "The stronger the mark, the greater the scope of protection accorded it. . ." and "[a]rbitrary marks are the strongest of the four categories." *Id.* The Eleventh Circuit recognized "that letter marks [are] generally accorded broader trademark protection because it is more difficult to remember a series of arbitrarily arranged letters than it is to remember words, figures, phrases, or syllables." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:33 (4th ed. 2015)). Thus, an inherently distinctive mark that is composed of an acronym is arbitrary and should be afforded the greatest scope of protection. *See, e.g., Kadant, Inc. v. Seeley Mach., Inc.,* 244 F. Supp. 2d 19, 27-29 (N.D.N.Y. 2003) (explaining that the "[p]laintiff's mark—AES—has inherent distinctiveness" as an arbitrary acronym, which indicates the mark's strength for purposes of the likelihood-of-confusion analysis). Here, the "VSI Sales, LLC" mark contains the letters VSI, which is simply a series of arbitrarily arranged letters that do little to desribe VSI's business of building and supplying steel and aluminum structures and other related services. Like the "AES" mark in the *Kadant, Inc.* case, the use of VSI in the "VSI Sales, LLC" mark is inherently distinctive in the steel and aluminum structure business and, as such, is an arbitrary mark.  Accordingly, the mark is the "strongest" of the four types of marks and it should be afforded the greatest amount of protection. *See Frehling Enters.*, 192 F.3d at 1335. For this reason, the strength of the "VSI Sales, LLC" mark weighs this factor convincingly in VSI's favor.

b.      **The infringed and infringing marks are identical.**

When analyzing the similarity of the infringed and infringing marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Id.* at 1337. Here, DiSimone is directly using the exact "VSI Sales, LLC" mark and embroidering it in the heading of his business emails. As such, the infringed and infringing marks are identical and this factor weighs conclusively in VSI's favor.

c.      **VSI and Engineered Pole Structures offer the same goods and services.**

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Id.* at 1338. Here, VSI and Engineered Pole Structures both conduct the business of building and supplying tubular steel and aluminum structures. The fact that the goods and services offered by both companies are the same type of goods and services, combined with the fact that DiSimone is using the "VSI Sales, LLC" designation in his business communications make it clear that the products and services offered by DiSimone through Engineered Pole Structures are the kinds of products and services that the public would attribute to VSI. For these reasons, this factor weighs heavily in VSI's favor as well.

d.      **VSI and Engineered Pole Structures have indistinguishable customer bases and sales methods.**

"This factor takes into consideration where, how, and to whom the parties' products are sold." *Id.* at 1339 (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 24:51, at 24-71). Further, "the parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Id.* VSI and Engineered Pole Structures both build and supply tubular steel and aluminum structures and sell the structures to the same market. As such, the similarity of both companies' outlets and customer bases goes well beyond the minimal

7

requirement of having some degree of overlap. In this case, DiSimone was targeting actual customers of VSI, who were already familiar with VSI's business.

Here, both Engineered Pole Structures and VSI engage in the same types of sales methods (involving email) to sell nearly the exact same products. Given the indistinguishable customer bases and sales/communication methods between the companies, this factor weighs decisively in VSI's favor.

      **e.**    **VSI and Engineered Pole Structures employ nearly identical advertising methods.**

"The key question in assessing similarity of advertising media is whether the parties' ads are likely to reach the same audience." *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1263 (11th Cir. 2016). Here, the specialized nature of the products and services offered by VSI and Engineered Pole Structures creates a situation where the companies do not rely on traditional marketing tactics to sell their products and services, but instead, rely on emails to prospective clients and through reputation in the industry and goodwill to advertise their products and services and to obtain orders. Considering there is direct evidence that DiSimone is using the "VSI Sales, LLC" name in his business emails in an attempt to solicit and conduct business by using the goodwill and industry reputation of VSI, as well as by using his past association with VSI, this factor also weighs heavily in VSI's favor.

      **f.**    **DiSimone knowingly and intentionally used the "VSI Sales, LLC" name with the purpose of misappropriating the goodwill and reputation of VSI.**

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. Here, it is apparent that DiSimone adopted the "VSI Sales, LLC" name to benefit from VSI's business reputation,

much as he did previously while employed by VSI to divert orders and business from VSI to his competing business. DiSimone was fired by VSI for misappropriating resources and customers to Engineered Pole Structures, which DiSimone and/or his wife own. Then after being fired, DiSimone was using "Anthony J. DiSimone – VSI Sales, LLC" as the display name for his business email account for Engineered Pole Structures. Not only did DiSimone intentionally use the mark without authorization, but he also made sure to use the mark in the display name of his email so that the first thing any potential customer he contacted saw was his name falsely associated with the goodwill and reputation of VSI. Given DiSimone's specific intention of deriving benefit from VSI's business reputation after his termination from the company, and his falsely representing his continued association and affiliation with VSI, there is sufficient evidence to establish an inference that there is confusing similarity for customers.

> **g.    Evidence of actual confusion need not be shown in this case because DiSimone used the VSI name after being terminated by VSI, thus creating a significant likelihood of confusion for the consuming public.**

Evidence of actual confusion is not necessary for the Court to find a *likelihood* of confusion. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985) (holding the trial court abused its discretion when not granting a preliminary injunction even when there was a stipulation that there was no evidence of actual confusion because a sufficiently strong showing of a likelihood of confusion by itself can prove a substantial likelihood of prevailing on the merits). Here, DiSimone purposefully used the "VSI Sales, LLC" name to solicit and conduct business for Engineered Pole Structures and to benefit from the goodwill and industry reputation of VSI, despite the fact that DiSimone was no longer affiliated with VSI in any way and Engineered Pole Structures was never affiliated with VSI. Like in *E.*

*Remy Martin & Co., S.A.*, the likelihood of confusion in this case is so strong that evidence of actual confusion is unnecessary for a preliminary injunction.

> h.   **When weighing all the factors, VSI has conclusively evidenced a strong likelihood of consumer confusion.**

"These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. . . .The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Custom Mfg. & Eng'g, Inc. v. Midway Servs.*, 508 F.3d 641, 650 (11th Cir. 2007) (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir. 1991)). Based solely on the fact that DiSimone intentionally used the "VSI Sales, LLC" mark with the intent of deriving benefit from VSI's reputation, an inference that there is confusing similarity for consumers in this case is justified. *See Frehling Enters.*, 192 F.3d at 1340. Beyond DiSimone's impure and corrupt intentions when using the VSI name, the name was the exact same name that is used by VSI, the mark was used to sell the exact products and services as VSI, and the mark was used to sell to the exact customer base that VSI sells to. Thus, when determining "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way," it is evident that the factors in the case evidence a very strong likelihood of consumer confusion. *See Custom Mfg. & Eng'g, Inc.* 508 F.3d at 650.

The final element to state a claim under § 1125(a) of the Lanham Act—that the plaintiff suffered damages as a result—simply requires that the plaintiff show a likelihood of suffering an injury at the preliminary injunction stage. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (explaining that the movant need only show a likelihood of injury for the court to grant a preliminary injunction phase under § 1125(a)). Here, it is worth noting that the threat to the reputation of VSI from DiSimone's conduct is apparent.

The email that evidences DiSimone's misconduct reflects customer complaints or dissatisfaction with DiSimone's performance, which would likely be attributed to VSI because of DiSimone's misappropriation of VSI's name even though VSI had absolutely no involvement in the complained of services.  As such, VSI has sufficiently evidenced the likelihood of injury caused by DiSimone's misconduct, which is necessary at the preliminary injunction stage.

## 2. VSI WILL FACE A SUBSTANTIAL THREAT OF IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.

The Eleventh Circuit has recognized that for most instances of infringement under the Lanham Act, "(1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (quoting *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir. 1982)). While a district court is not to automatically presume irreparable harm upon the showing of a substantial likelihood of success for an infringement claim, in this case, a presumption of irreparable harm would be appropriate because this case deals with a common type of infringement where an identical mark is used to sell nearly identical products or services to an indistinguishable client base. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) (holding that a district court should not automatically presume irreparable injury, but "it may well decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions."); *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:47 (4th ed. 2009) ("the presumption of irreparable injury traditionally followed in trademark preliminary injunction cases is in [no] way inconsistent with the letter or the spirit of the Supreme Court's *eBay* decision.").

3.      **THE THREATENED INJURY TO VSI HEAVILY OUTWEIGHS ANY HARM AN INJUNCTION MAY CAUSE TO DiSIMONE.**

DiSimone's use of the "VSI Sales, LLC" mark creates an immeasurable and irreparable harm to VSI. Such unauthorized use by DiSimone with the intent of deceiving customers into believing that DiSimone is in any way affiliated with VSI not only harms VSI by misappropriating customers that wish to purchase goods and services from VSI, but also harms VSI by damaging the goodwill and reputation of VSI in the market. As noted above, when DiSimone falsely displays an affiliation with VSI, any unsatisfactory performance by DiSimone reflects negatively on VSI, despite VSI's inherent lack of involvement and its express dissociation with DiSimone.

Moreover, DiSimone would suffer absolutely no harm if the Court grants the requested preliminary injunction, because DiSimone has no right or authority to use the mark or to mislead or misrepresent to the relevant market and public that he is affiliated or associated with VSI. DiSimone can claim no interest in misappropriating VSI's customers, goodwill, and good name. Such an injunction would not limit DiSimone in any way from engaging in legitimate commerce and business.  As such, the threatened injury to VSI far outweighs the lack of harm that DiSimone would suffer from the requested injunctive relief.

4.      **GRANTING THE PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC'S INTEREST**.

The Eleventh Circuit explained that "the public deserves not to be led astray by the use of inevitably confusing marks. . . ." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008).  In the *Angel Flight* case, the court found that the public interest in avoiding confusion could be the *only* public interest the court considers when deciding whether to issue an injunction. *Id.* Here, the public's tremendous interest in fair business practices and not being deceived in the marketplace combined with the extremely high risk of customer confusion,

due to DiSimone's use of the exact VSI mark to sell nearly identical products and services as VSI, exemplifies that the public interest would be served by the Court granting VSI's requested injunctive relief.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant a preliminary injunction to the plaintiff, VSI Sales, LLC, and preliminarily enjoin Mr. DiSimone from continuing to use any mark confusingly similar to "VSI" or "VSI Sales, LLC"; from continuing to falsely or misleadingly represent himself to be associated or affiliated with VSI; from continuing to compete unfairly against VSI; from continuing to falsely or misleadingly represent his company as being affiliated or associated with VSI; and from otherwise deceiving or misleading the relevant public and market.

## **REQUEST FOR EVIDENTIARY HEARING AND ORAL ARGUMENT**

Pursuant to Local Rule 7.1(b)(2), VSI respectfully requests that the Court schedule an evidentiary hearing (permitting witness testimony and other evidence) and oral argument on VSI's motion for preliminary injunction. Such a hearing would permit elucidation of the issues raised by the motion as well as provide grounds for the Court's order on the motion. VSI Sales estimates that one day should be sufficient for the hearing and argument.

Dated: July 10, 2020                    Respectfully submitted,

                                        **BURSTEIN & ASSOCIATES, P.A.**
                                        Attorney for Plaintiff VSI Sales, LLC
                                        13744 Biscayne Boulevard
                                        North Miami Beach, Florida 33181
                                        Telephone No.: (305) 957-7066
                                        E-mail: bburstein@bursteinpa.com
                                        bursteinandassociates@gmail.com

                                        By:    /s/ Bernardo Burstein
                                               Bernardo Burstein
                                               Fla. Bar No. 972207

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed and served electronically via the CM/ECF to: Eric Lee, Esq., 5550 Glades Road, Suite 401, Boca Raton, FL 33431 on this 10th day of July 2020.

                                        /s/Bernardo Burstein
                                        Bernardo Burstein, Esq.