**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 20-61119-CIV-CANNON/Hunt**

VSI SALES, LLC,
**STRUCTURES U.S. LLC**, and
**STRUCTURES U.S.A., LLC**,

       Plaintiffs,

v.

**ANTHONY DISIMONE**,
**ANGELA DISIMONE**, and
**ENGINEERED POLE STRUCTURES, LLC**,

       Defendants.

_____/

**<u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

**THIS CAUSE** comes before the Court upon Defendants' Motion for Summary Judgment

("Defendants' Motion") [ECF No. 59]; Plaintiffs' Motion for Partial Summary Judgment

("Plaintiffs' Motion") [ECF No. 61]; and Defendants' Motion to Strike Declaration of Undisclosed

Witness and Related Portions of Plaintiffs' Statement of Facts ("Motion to Strike") [ECF No. 79].

The Court has reviewed the cross-motions for summary judgment and the Motion to Strike, the

parties' responses in opposition [ECF Nos. 68, 73, 95], the parties' replies [ECF Nos. 81, 83, 96],

the parties' statements of facts [ECF Nos. 60, 62, 69, 78, 82, 84], and the full record.  The Court

also held a hearing on the motions [ECF No. 99].  For the reasons set forth herein, Defendants'

Motion [ECF No. 59] is **GRANTED IN PART AND DENIED IN PART**, Plaintiffs' Motion

[ECF No. 61] is **DENIED**, and Defendants' Motion to Strike [ECF No. 79] is **DENIED**, although

the Court has not considered the Declaration of Wesley Beeston [ECF No. 78-4] in deciding the

parties' cross-motions for summary judgment.

## FACTUAL BACKGROUND

This case arises from a dispute about whether employees of one business started a side business to compete with their employer.  The following material facts are drawn from Defendants' Statement of Material Facts [ECF No. 60]; the parties' Joint Statement of Undisputed Facts [ECF No. 65]; Plaintiffs' Statement of Material Facts [ECF No. 62]; and the parties' responses and replies thereto [ECF Nos. 69, 78, 82, 84].[1]

### Formation of Structures U.S.

In 2005, Defendant Angela DiSimone ("Angela") founded VSI Sales, LLC ("VSI Sales"), a company that builds and sells tubular steel and aluminum structures [ECF No. 65 ¶¶ 1, 12].

---

[1] The full summary judgment record contains the following: Defendants' Motion for Summary Judgment [ECF No. 59]; Defendants' Statement of Undisputed Material Facts [ECF No. 60]; Declaration of Anthony DiSimone [ECF No. 60-1]; Declaration of Angela DiSimone [ECF No. 60-2]; Structures US Contribution Agreement [ECF No. 60-3]; VSI Sales and Structures Disclosure Schedules [ECF No. 60-4]; Notice of Claims [ECF No. 60-5]; March 3, 2019 Robert Smook Email [ECF No. 60-6]; Job Diversion Chart [ECF No. 60-7]; March 21, 2019 Anthony DiSimone Email [ECF No. 60-8]; Answers to Interrogatories [ECF No. 60-9]; June 1, 2020 Rick Negro Email [ECF No. 60-10]; Settlement Agreement [ECF No. 60-11]; Sabre Court Judgment [ECF No. 60-12]; Robert Smook Deposition Transcript Excerpt [ECF No. 60-13]; Sandra Atkins Deposition Transcript Excerpt [ECF No. 60-14]; Structures US Operating Agreement [ECF No. 60-15]; Plaintiffs' Motion for Partial Summary Judgment [ECF No. 61]; Plaintiffs' Statement of Non-Genuinely Disputed Facts [ECF No. 62]; Deposition Excerpts of Anthony DiSimone [ECF No. 62-1]; Deposition Excerpts of Angela DiSimone [ECF No. 62-2]; Deposition Excerpts of Robert Smook [ECF No. 62-3]; Deposition Excerpts of Roger Johal [ECF No. 62-4]; Structures US Operating Agreement [ECF No. 62-5]; Deposition Excerpts of Jorge Ortiz [ECF No. 62-6]; Deposition Excerpts of Sandra Atkins [ECF No. 62-7]; Deposition Excerpts of Sheri Fiske [ECF No. 62-8]; Joint Statement of Undisputed Facts [ECF No. 65]; Defendants' Response to Plaintiffs' Statement of Non-Genuinely Disputed Facts [ECF No. 69]; Deposition Excerpts of Anthony DiSimone [ECF No. 69-1]; Deposition Excerpts of Angela DiSimone [ECF No. 69-2]; Angela DiSimone Resignation Letter [ECF No. 69-3]; Deposition Excerpts of Sheri Fiske Schultz [ECF No. 69-4]; Deposition Excerpts of Sandra Atkins [ECF No. 69-5]; Deposition Excerpts of Robert Smook [ECF No. 69-6]; Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment [ECF No. 73]; Plaintiffs' Response to Defendants' Statement of Material Facts [ECF No. 78]; Declaration of John Roberts [ECF No. 78-1]; Exhibits to Declaration of John Roberts [ECF Nos. 78-2; 78-3]; Declaration of Wesley Beeston [ECF Nos. 78-4]; Declaration of Robert Smook [ECF No. 78-5]; Exhibits to Declaration of Robert Smook [ECF Nos. 78-5, 78-6, 78-7, 78-8, 78-9, 78-10, 78-11, 78-12, 78-13, 78-14, 78-15]; Deposition Excerpts of Sandra Atkins [ECF No. 78-16]; Deposition Excerpts of Anthony DiSimone [ECF No. 78-17]; February 14, 2019 Anthony DiSimone Email [ECF No. 78-18]; Plaintiffs' Reply in Support of their Motion for Partial Summary Judgment [ECF No. 81]; Plaintiffs' Reply to Defendants' Additional Facts [ECF No. 82]; Deposition Excerpts of Oscar Hatchett [ECF No. 82-1]; Defendants' Reply in Support of their Motion for Summary Judgment [ECF No. 83]; Defendants' Reply to Plaintiffs' Additional Facts [ECF No. 84]; Declaration of Anthony DiSimone [ECF No. 84-1]; Declaration of Angela DiSimone [ECF No. 84-2]; Kansas Summons and Complaint [ECF No. 84-3]; and the September 4, 2020 Bernardo Burstein Email [ECF No. 84-4].

VSI Sales is a Pennsylvania limited liability company with its principal place of business in Kentucky [ECF No. 65 ¶ 2]. Angela owned an additional company called Structures USA, LLC ("SUSA"), which also serviced the steel industry [ECF No. 60 ¶ 3; ECF No. 78 ¶ 3].

On or about June 29, 2018, VSI Sales and SUSA were purchased by Nova Structures, Inc. ("Nova"), a Canadian company [ECF No. 65 ¶ 18]. As a result of the sale, a new umbrella company called Structures US, LLC ("Structures") was formed for the purpose of overseeing the business conducted by VSI Sales and SUSA, which became subsidiaries of Structures [ECF No. 65 ¶¶ 14–15]. Structures is a Kentucky limited liability company, and its principal place of business is located in Kentucky [ECF No. 65 ¶ 4].

**Release of Personal Guarantees**

To effectuate the purchase, the parties entered into a Contribution Agreement, signed on June 29, 2018 [ECF No. 65 ¶ 19; ECF No. 60-3]. At the time of the closing on the Contribution Agreement, the parties knew and understood that VSI Sales had previously entered into a settlement agreement with Sabre Tubular Structures – PA, LLC ("Sabre") whereby VSI Sales was obligated to pay $300,000.00 to Sabre on before December 31, 2018—six months after the Contribution Agreement was signed [ECF No. 65 ¶ 21; *see* Sabre Settlement, ECF No. 57-2 p. 2]. Pursuant to the Sabre settlement, Angela and Anthony personally guaranteed the obligation to Sabre, and the settlement was disclosed in the Disclosure Schedules to the Contribution Agreement [ECF No. 65 ¶¶ 22-23]. Accordingly, the Contribution Agreement provided for a release of the personal obligations for Angela and Anthony.

Section 7.6 of the Contribution Agreement provides as follows:

As soon as commercially practical after the Closing Date, the Company shall take all commercially reasonable steps to cause both DiSimone and Anthony to be unconditionally and fully released from any and all indemnity obligations that either DiSimone or Anthony have with respect to either of the LLCs or their

respective obligations (the "Personal Guarantees") including, without limitation the personal guarantees listed on Schedule Y.

[ECF No. 65 ¶ 25; ECF No. 60-3 p. 26].

Section 10.3(b) of the Contribution Agreement states:

Subject to the limitations set out in Section 10.4, Nova Pole covenants and agrees to indemnify and hold the Company and DiSimone harmless against all Indemnity Claims suffered or incurred by the Company or DiSimone, as applicable, as a direct result of a material breach of any agreement, term or covenant on the part of that DiSimone (excluding breaches or representations and warranties covered by Section 10.3(a) above) made or to be observed or performed under this Agreement.

[ECF No. 65 ¶ 26; ECF No. 60-3 p. 29].

Section 10.6 of the Contribution Agreement states:

If any claim is made by any Person against the Company or DiSimone in respect of which the Company or DiSimone may incur or suffer damages, losses, costs or expenses that might reasonably be considered to be subject to the indemnity obligation of Nova Pole as provided in Section 10.3, the party seeking indemnification under Section 10.3 shall provide written notice of such Indemnity Claim to Nova Pole as soon as reasonably practicable setting forth in reasonable detail the nature and basis of such Indemnity Claim and Nova Pole shall be entitled (but not required) to assume the defense of any suit brought to enforce such claim. The defense of any such claim (whether assumed by Nova Pole or not) shall be through legal counsel and shall be conducted in a manner acceptable to Nova Pole and the parties seeking indemnity, acting reasonably, and no settlement may be made by Nova Pole or the Company without the prior written consent of the others.

[ECF No. 65 ¶ 27; ECF No. 60-3 p. 31].

It is undisputed that, although the parties were aware that VSI was obligated to pay Sabre, VSI Sales did not pay the obligation on or before the due date [ECF No. 65 ¶ 28]. Plaintiffs admit that they took no efforts to release Angela and Anthony from the obligation [ECF No. 60 ¶ 86; ECF No. 78 ¶ 86]. Consequently, pursuant to the terms of the Sabre settlement, Sabre proceeded to obtain a judgment against VSI, Anthony, and Angela [ECF No. 65 ¶ 29; *see* Sabre Judgment ECF No. 60-12]. According to Plaintiffs, Structures discovered that Angela had failed to disclose all VSI Sales' pending obligations when the Contribution Agreement was signed, and as a result,

Structures advised Angela and Anthony that it would not pay the judgment [ECF No. 78 ¶ 90]. Defendants dispute this recounting of events, stating that the Sabre settlement was fully disclosed to Plaintiffs at the time the Contribution Agreement was signed [ECF No. 84 ¶ 96].

After the Sabre judgment was entered, Angela and Anthony negotiated a resolution with Sabre whereby they would pay $330,000 to settle the dispute [ECF No. 60 ¶ 91; ECF No. 78 ¶ 91 (disputing that Angela and Anthony were "forced" to pay the settlement, but not disputing that Angela and Anthony agreed to pay $300,000 to Sabre)]. Angela and Anthony subsequently had discussions about the new Sabre settlement with Robert Smook, president of Structures, which resulted in an agreement under which Nova US would pay $150,000.00 of the $330,000.00 settlement in exchange for Promissory Notes from Anthony and Angela [ECF No. 65 ¶ 30]. The parties dispute whether the Promissory Notes fully resolved the underlying obligations and duties under the Contribution Agreement [ECF No. 60 ¶¶ 93–94; ECF No. 78 ¶¶ 93–94].

### Formation of Engineered Pole Services (EPS)

After Structures was formed and purchased the companies, Angela and her husband, Anthony DiSimone ("Anthony"), continued to work for VSI and Structures [ECF No. 56 ¶ 31]. Within VSI Sales and SUSA, Angela was responsible for billing and collections, and Anthony oversaw the sales and engineering of VSI Sales and SUSA [ECF No. 65 ¶¶ 34–35].

Shortly after the creation of Structures US, in November 2018, Anthony formed a company in Florida called Engineered Pole Structures, LLC ("EPS") [ECF No. 62 ¶ 15; ECF No. 69 ¶ 15]. According to Defendants, the purpose of EPS was not to compete with VSI or SUSA, but instead was created to service customers that VSI and SUSA "refused to service or were otherwise unable to financially do business with" [ECF No. 60 ¶ 22]. Defendants explain that Nova, VSI Sales and SUSA had imposed a restriction on future contracts unless the contract was 40% above raw cost,

which meant that several projects could not be fulfilled, leading to a significant backlog of work [ECF No. 60 ¶¶ 25–27]. According to Defendants, the reason that Anthony transferred portions of VSI Sales and SUSA's contracts to EPS was "to avoid default issues and to finalize the contracts" [ECF No. 60 ¶ 34]. Defendants explain that there were certain contracts that VSI and SUSA were purportedly unable to fulfill "due to the backlog, lack of credit with specific vendors needed to fulfill contracts, and the 40% margin requirement" [ECF No. 60 ¶¶ 34–35]. Defendants further maintain that neither Anthony, Angela nor EPS diverted or converted Plaintiffs' customer information, orders, or payments, and that VSI and SUSA received payment for any materials that were used to complete orders that were transferred to EPS [ECF No. 60 ¶¶ 41–43]. Anthony contends that he devoted his full-time efforts to VSI and SUSA but worked after hours and weekends on EPS projects [ECF No. 60 ¶¶ 23–24].

Plaintiffs sharply disagree with Defendants' characterization and maintain that EPS was formed "to take orders and contracts that belonged to VSI Sales and SUSA and to solicit orders and contracts from existing customers of VSI Sales and SUSA" [ECF No. 78 ¶¶ 20–23]. According to Plaintiffs, it is false that VSI Sales and SUSA had a backlog of projects that could not be fulfilled [ECF No. 78 ¶ 25]. Plaintiffs contend that no minimum 40% gross margin requirement for new contracts was imposed but was instead "discussed merely [as] an inspirational average, not a requirement" [ECF No. 78 ¶ 18 (alteration added)]. Plaintiffs also dispute that Defendants never diverted VSI Sales and SUSA contracts, stating that Defendants converted or used Plaintiffs' "customer lists, customer contacts, servers, and order information," and that the revenue from those diverted contracts was never remitted to Plaintiffs [ECF No. 78 ¶ 41].

The parties do agree, however, about certain aspects of EPS. First, they agree that Anthony used VSI Sales and SUSA employees, such as Mr. Allman and Mr. Scott, to work for EPS while

both of those individuals were still employed by VSI Sales and SUSA [ECF No. 65 ¶ 37].  Second, they agree that Anthony first told Angela about the existence of EPS in either November or December of 2018 [ECF No. 65 ¶ 36].  Third, they agree that Angela was aware that VSI Sales and SUSA employees, such as Mr. Allman and Mr. Scott, were working on EPS projects, but that Angela did not notify anyone at Structures U.S., Nova, or Nova Pole [ECF No. 65 ¶ 38].  Fourth, they agree that no one else at VSI Sales, SUSA, Structures, Nova, or Nova Pole was aware that Mr. Allman and Mr. Scott were performing services for EPS [ECF No. 65 ¶ 39].  And last, although the parties dispute the factual details about the formation and activity of EPS, it is undisputed that the following jobs were transferred from VSI Sales and SUSA to be fulfilled by EPS:

| EPS Job No. | Customer Name | Award Date | Date | Company | Job # |
|---|---|---|---|---|---|
| EPS-002 | Ducci | 03/01/19 | 2019 | VSIS | V1080 |
| EPS-003 | ECI | 04/08/19 | 2019 | SUSA | S293 |
| EPS-011 | Ducci | 08/29/19 | 2020 | SUSA | S384 |
| EPS-014 | Ducci | 12/09/19 | 2019 | SUSA | S355 |
| EPS-016 | Ducci | 12/09/19 | 2019 | SUSA | S360 |
| EPS-017 | Verde Electric Co. | 09/03/19 | 2019 | VSIS | V1165 |

[ECF No. 65 ¶ 43].

**Email Communication with VSI Sales' Logos**

As employees of VSI Sales and SUSA, Angela and Anthony were authorized to send emails to customers, which included the VSI Sales and SUSA names and logos [ECF No. 65 ¶ 39]. Angela and Anthony sent thousands of such emails [ECF No. 65 ¶ 47], and Plaintiff does not challenge the use of the logos alone.  Rather, Plaintiffs allege that Angela and Anthony improperly used the names and logos of VSI and SUSA to mislead customers that they were authorized, on

behalf of VSI Sales and SUSA, to divert work to EPS [ECF No. 65 ¶ 37].   There are six emails that Defendants identify as purportedly creating a likelihood of confusion among their customers.

1. On February 13, 2019, Anthony sent an email to Ducci Electrical Accounts Payable displaying his email address DSimone@vsisales.com and displaying the SUSA name and logo and those of VSI Sales, attaching "our Invoice No. EPS-001, 2-12-19." Attached is an EPS invoice (for $208,969.00) [ECF No. 78-5, pp. 24–26].

2. On February 14, 2019, Anthony sent an email from his VSI Sales email to Jorge Ortiz, Senior Project Manager of Electrical Contractors, Inc., and instructed Mr. Ortiz to write a new purchase order to EPS for $273,871 [ECF No. 78-18, pp. 1–3].   In the email, Anthony stated that the new order was for "my job financing reasons" [ECF No. 78-18, p. 1].

3. On May 19, 2019, Anthony sent another email to Chris Hynes of Ducci Electrical containing a revised SUSA purchase order that diverted work to EPS [ECF No. 78-5, pp. 109–111 (showing the name and address of SUSA crossed out and replaced with a handwritten reference to EPS)].   Anthony explains in the email that revision of the purchase order is needed so Hynes can get expedited delivery [ECF No. 78-5, pp. 109–111].

4. On November 18, 2019, Jay Allman, a SUSA and VSI Sales employee, sent various documents from his EPS email account to Rizzo Companies, and those documents contained references to SUSA [ECF No. 78-13, pp. 16–44].

5. On September 19, 2019, Steve Scott, a SUSA and VSI Sales employee, sent SUSA documents, including drawings from his EPS email account to a customer, Jim Schneider [ECF No. 78-12, pp. 25–52].

6. Lastly, on June 1, 2020, a customer named Rick Negro, from Ducci Electrical Contractors, sent an email to Anthony's EPS email address, in which the email designation for Anthony is listed as "VSI Sales, LLC" [ECF No. 60-10]. The parties agree that this email was sent by Mr. Negro after Anthony was terminated and is not an email that Anthony sent to Mr. Negro [ECF No. 65 ¶¶ 50–51].

### PROCEDURAL HISTORY

Based on these events, Plaintiffs filed their complaint on June 5, 2020 [ECF No. 1]. The initial complaint alleged a single count for violation of the Lanham Act, 15 U.S.C. § 1125(a) [ECF No. 1 ¶¶ 13–17]. On September 11, 2021, Plaintiffs amended their complaint after obtaining leave of Court, this time asserting one claim arising under the Lanham Act and eleven claims arising under state common law [ECF No. 24].

On September 25, 2020, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 28]. On April 13, 2021, the Court entered an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 50]. The Court dismissed without prejudice Counts 5, 8, 10, and 11 and dismissed without prejudice Count 12 as to Defendant EPS [ECF No. 50 p. 16 ¶¶ 2–3]. Plaintiffs did not seek to file a second amended complaint [ECF No. 59 p. 16 ¶ 5], and therefore only the following Counts in the operative Amended Complaint remain:

- <u>Count 1</u> – Violation of 15 U.S.C. § 1125(a) (against all Defendants);

- <u>Count 2</u> –Unfair Competition (against all Defendants);

- <u>Count 3</u> – Breach of Fiduciary Duty (against the Individual Defendants);

- <u>Count 4</u> – Breach of the Operating Agreement (against Angela DiSimone);

- <u>Count 6</u> –Misappropriation and Conversion of Company Assets (against all Defendants);

- <u>Count 7</u> – Tortious Interference with Business and Contractual Relations (against all Defendants);

- <u>Count 9</u> – Tortious Interference with the Operating Agreement (against Anthony DiSimone and Engineered Pole Structures); and

- <u>Count 12</u> – Accounting (against Anthony and Angela DiSimone).

On July 9, 2021, Defendants Anthony and Angela filed their Amended Counterclaim [ECF No. 57]. The Amended Counterclaim asserts claims against Plaintiff Structures U.S. for breach of Contribution Agreement (Count 1); indemnification against Plaintiff VSI (Count 2); fraudulent inducement against all Counterclaim Defendants (Count 3), and Setoff against all Counterclaim Defendants (Count 4) [ECF No. 57 ¶¶ 53–76].

On July 19, 2021, Defendants filed their Motion for Summary Judgment [ECF No. 59]. Defendants seek summary judgment in their favor as to all remaining Counts in the Amended Complaint, but only seek summary judgment on Counts 1 and 2 of the Amended Counterclaim (breach of contribution agreement and indemnification) [ECF No. 59 pp. 1, 18].

On July 19, 2021, Plaintiffs filed a Motion for Partial Summary Judgment [ECF No. 61]. Plaintiffs move for summary judgment only as to Count 3 of the Amended Complaint (breach of fiduciary duty), but request that the Court "reserve for trial the issue of damages" on Count 3 [ECF No. 61 p. 2].

The cross-motions for summary judgment are ripe for adjudication.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the

outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden to prove the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party.  *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).

## DISCUSSION

### A.  Choice of Law

As a threshold matter, the Court must determine whether Kentucky or Florida law applies to the common law claims asserted in the Amended Complaint.  Plaintiffs contend that Kentucky law governs each of the common law claims [ECF No. 61, pp. 2–3].  In their response, Defendants do not concede that Kentucky law applies, but note that, "for purposes of the Response to the Motion for Summary Judgment, Defendants utilize Kentucky law" [ECF No. 68 p. 2 n.1].  Defendants' Motion for Summary Judgment does not appear to take a position on what law applies, although it cites heavily to Florida law [ECF No. 59].  For the reasons stated below, the Court finds that Kentucky law governs the contract claim and Florida law governs the tort claims.

This is a diversity action.  In diversity cases, the Court applies the substantive law of the forum, Florida, including Florida's choice of law rules.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 90 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  In *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538 (11th Cir. 1983), the Eleventh Circuit provided the following three step approach to a choice of law analysis:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state of [Florida] applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

*Id.* at 1540.

As noted, Plaintiffs have filed an Amended Complaint asserting both contract and tort claims [ECF No. 24].  Thus, the nature of the problem is both tort and contract.  With the nature of the problem established, the Court next determines the choice of law rule that Florida applies.  For purposes of determining the rights and liabilities of the parties under contracts, Florida adheres

to the *lex loci contractus* doctrine.  *Trumpet Vine Invs., N.V. v. Union Capital Partners I*, 92 F.3d 1110, 1119 (11th Cir. 1996).  As to torts, "Florida applies the significant relationship test of the Restatement (Second) of Conflicts of Laws."  *Nelson v. Freightliner, LLC*, 154 F. App'x 98 (11th Cir. 2005) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).  The Court will apply these approaches to the facts.

Pursuant to the *lex loci contractus* doctrine, the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties.  *Id.* (citing *Sturiano v. Brooks*, 523 So.2d 1126, 1129 (Fla. 1988)).  Here, the Operating Agreement and the Contribution Agreement were signed in Kentucky [ECF No. 60-3 p. 38; ECF No. 60-15 p. 42].  Therefore, under Florida's rule of *lex loci contractus*, Kentucky law applies to the contract claims raised in Count 4 of the Amended Complaint and in Count 1 of the Amended Counterclaim [ECF No. 24 ¶¶ 37–39; ECF No. 57 ¶¶ 53–57].

In the tort context, Florida follows the "most significant relationship test" of the Restatement (Second) of Conflicts of Law. The Restatement (Second) provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of L. § 145 (Am. L. Inst. 1971).  The place where the injury occurred is generally the most important, as "absent special circumstances, '[t]he state where the

injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (quoting *Bishop*, 389 So.2d at 1001). The choice of law analysis shifts, however, when the defendant's conduct and the resulting injury occurred in different states. Comment "e" to Section 145(2) notes as follows:

> When the injury occurred in two or more states, or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law . . . [W]hen the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance . . . .

Restatement (Second) of Conflict of L. § 145(2) (Am. L. Inst. 1971)); *see also Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1241 (11th Cir. 2007) (explaining that the location of a defendant's conduct is the "single most important contact" pursuant to Section 145 of the Restatement on Conflicts of Law).

The Court examines Plaintiffs' and Defendants' tort claims against this analytical backdrop. Upon review, it is clear that Florida has the most significant relationship to the claims. It is undisputed that Anthony, while living and working in Florida, created EPS, an organization governed by the laws of Florida, with its principal place of business in Broward County, Florida [ECF No. 65 ¶¶ 5–6, 43; *see* Robert Smook Declaration, ECF No. 78-5 p. 12 ¶ 40 (stating that EPS "operates from the home of Anthony and Angela")]. The alleged tortious conduct that Anthony and Angela engaged in—re-routing orders from VSI Sales to EPS—occurred in Florida, and this conduct forms the basis of all of Plaintiffs' claims against Defendants. Both VSI Sales and Structures have their principal place of business in Kentucky [ECF No. 65 ¶¶ 1–2]; however, when balanced against the factors supporting Florida law, the scales tip in favor of application of Florida

law.  *See Telemundo*, 485 F.3d at 1241 n.1 (11th Cir. 2007) ("Indeed, the comments note, the 'place where the conduct occurred' assumes particular importance 'in the case of torts involving interference with a marriage relationship or **unfair competition** since in the case of such torts there is often no one clearly demonstrable place of injury.'" (emphasis added)).

Accordingly, Kentucky law governs the contract claim in this case, and Florida law governs the tort claims in this case.

## B.  Count 1 – False Designation of Origin under the Lanham Act

Count 1 of the Amended Complaint alleges a claim for false designation of origin under the Lanham Act [ECF No. 24 ¶¶ 27–30 (citing 15 U.S.C. § 1125(a))].  In support, Plaintiffs assert as follows:

> Defendants have made use of "VSI Sales, LLC" and/or its logos and SUSU's [sic] name and/or its logos in connection with goods or services or a false or misleading description of fact or false or misleading representations of fact in a manner that is likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of the Defendants with VSI Sales and/or SUSA, or as to the origin, sponsorship or approval of the Defendants' goods or services or commercial activities by another person.

 [ECF No. 24 ¶ 28].

Defendants move for summary judgment, arguing that Plaintiffs failed to offer evidence to support their claim under the Lanham Act that customers were confused as a result of receiving emails from Anthony or others who worked on EPS orders [ECF No. 59 pp. 7–11].

Section 43(a) of the Lanham Act provides as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same way as a trademark infringement or false association claim. *See Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act."). To prevail on a false endorsement claim, Plaintiffs must show that "(1) [they] had trademark rights in the mark or name at issue" and "(2) [Defendants] had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." S*untree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (quoting *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010)).

To evaluate whether a likelihood of confusion exists, the court analyzes seven factors:

(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana*, 611 F.3d at 774–75.

In weighing these factors, "[t]he last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Id*. 611 F.3d at 779; *All.*

*Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) ("The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion.").

Here, although the Court has considered the seven factors outlined in *Tana*, 611 F.3d at 774–75, the Court is not faced with a dispute concerning two logos that appear confusingly similar such that use of one logo would cause confusion to consumers.  It is undisputed that Plaintiffs own the VSI Sales and SUSA logos, and that Anthony and Angela used those same logos in their email communications [ECF No. 65 ¶ 46].  Instead, the narrow issue is whether Defendants' use of those logos in their email communications caused confusion among VSI Sales and SUSA's customers. On that point, Defendants assert that (1) no customer was confused after seeing a VSI Sales or SUSA logo in an email that referenced EPS, and (2) Plaintiffs have failed to offer any evidence to the contrary [ECF No. 59 p. 10].

In response, Plaintiffs maintain that the six emails sent on behalf of EPS (as noted earlier) were "intended or at least likely to confuse or cause a mistaken belief in VSI Sales and SUSA customers, in order to benefit EPS and harm the Plaintiffs" [ECF No. 73 p. 9].  Plaintiffs also argue that it is "obvious" that they were harmed by this email communication [ECF No. 79 p. 9].

Taking all of the evidence in the light most favorable to Plaintiffs as the nonmoving party, the Court determines that summary judgment on Plaintiffs' false endorsement claim is warranted because there are no genuine issues of material fact regarding the likelihood of consumer confusion.  Both parties agree that Anthony and Angela were authorized as employees of VSI Sales and SUSA to send emails to customers, which included the VSI Sales and SUSA names and logos [ECF No. 65 ¶ 39].  The dispute, then, centers on whether Anthony and Angela, in sending such emails, were authorized to solicit and/or to conduct business on behalf of EPS.  On that point, of the six emails that Plaintiffs identify as causing a likelihood of confusion, none clears the bar

of providing evidence of actual confusion. True, as Plaintiffs point out, it is possible that consumers who saw the VSI Sales or SUSA logos could have been confused, but Plaintiffs do not put forward any evidence of actual confusion.

"Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law." *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514–15 (11th Cir. 1984)). The Eleventh Circuit has "routinely 'weighed' the likelihood-of-confusion factors on summary judgment." *Tana,* 611 F.3d at 774, 775 n.7 (citations omitted). Based on Plaintiffs' failure to adduce sufficient evidence upon which a reasonable jury could find a likelihood of confusion due to Defendants' use of Plaintiffs' logos in email communication, there is no issue of material fact to preclude summary judgment in favor of Defendants. Defendants are entitled to judgment as a matter of law on Plaintiffs' false endorsement claim. *See Gibson v. Resort At Paradise Lakes, LLC*, No. 16-CV-791, 2018 WL 10373435, at *12 (M.D. Fla. Feb. 2, 2018) (granting summary judgment and finding no likelihood of consumer confusion when there was no evidence of actual confusion).

### C. Count 2 – Common Law Unfair Competition

For the reasons addressed above, Defendants are likewise entitled to summary judgment with respect to Count 2, Plaintiffs' claim for common law unfair competition. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc*., 508 F.3d 641, 652 (11th Cir. 2007) ("Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law."); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n. 4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").

### D.  Count 3 - Breach of Fiduciary Duty

Both Plaintiffs and Defendants move for summary judgment on whether Angela and Anthony breached their fiduciary duties [ECF No. 59 pp. 13–14; ECF No. 61 pp. 3–10].  Count 3 of the Amended Complaint alleges that Angela and Anthony are liable to Plaintiffs for breaching their fiduciary duties to Plaintiffs while serving as officers and employees of VSI Sales and SUSA [ECF No. 24 ¶¶ 34–36].  Plaintiffs allege that Anthony, "while an employee of VSI Sales and SUSA, set up a competing business, which he operated with his wife's assistance" [ECF No. 61 p. 6].  Plaintiffs further allege that Angela breached her fiduciary duties by failing to notify Structures that VSI Sales and SUSA employees were being used to complete orders for EPS [ECF No. 61 p. 9].

Under Florida law, a claim for breach of fiduciary duty requires proof of (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002).  A fiduciary relationship exists where confidence is reposed by one party and a trust accepted by the other.  *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002).  "[A]n employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers . . . prior to the end of his employment."  *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007).  "An employee does not have to be managerial in order to have this duty."  *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. Dist. Ct. App. 1981).

Summary judgment is not warranted on Count 3 in favor of either party.  Defendants "agree that there is a factual issue as to whether there was a fiduciary duty and whether there was a breach of that duty as it relates to VSI and SUSA" [ECF No. 83 p. 8].  As Defendants tell the story, Anthony transferred portions of VSI Sales and SUSA's contracts to EPS "to avoid default issues

and to finalize the contracts," because VSI and SUSA were purportedly unable to fulfill them "due to the backlog, lack of credit with specific vendors needed to fulfill contracts, and the 40% margin requirement" [ECF No. 60 ¶¶ 34–35].  In contrast, Plaintiffs argue that Angela and Anthony owed a fiduciary duty "while employed and collecting substantial compensation as employees, to not set up and operate surreptitiously a competing business" [ECF No. 61 p. 4].  Plaintiffs dispute Anthony's claim that VSI and SUSA imposed a minimum 40% gross margin requirement for new contracts, characterizing that threshold merely as a goal, not a requirement [ECF No. 78 ¶ 18 (alteration added)].  Plaintiffs also argue that Angela and Anthony breached their duties by converting or using Plaintiffs' "customer lists, customer contacts, servers, and order information," and state that the revenue from those diverted contracts were never remitted to Plaintiffs [ECF No. 78 ¶ 41].

Drawing all reasonable inferences from these facts, an issue of fact exists as to whether the diverted orders constituted a breach of fiduciary duty. A jury should determine whether this conduct constitutes a breach of the duty that Angela and Anthony may have owed to Plaintiffs. *See, e.g.*, *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("So when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible.").  Accordingly, the Court will not grant summary judgment on Count 3 of the Amended Complaint for breach of fiduciary duty.

### E.  Count 4 - Breach of Contract

In Count 4 of the Amended Complaint, Plaintiffs allege that Angela DiSimone breached the Operating Agreement by improperly disclosing Plaintiffs' confidential information to EPS and by not obtaining board approval for certain transactions associated with EPS

[ECF No. 24 ¶¶ 37–39].  Defendants argue that summary judgment must be granted because there is no evidence that Angela breached the Operating Agreement [ECF No. 59 pp. 14–15].

As stated above, pursuant to Florida's choice of law principles, Kentucky law governs the claim for breach of contract.  "To establish a claim for breach of contract, Kentucky common law requires the plaintiff to establish: '1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.'"  *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 886 (E.D. Ky. 2014) (quoting *Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, 453 F. App'x 589, 601 (6th Cir. 2011)).

It is undisputed that Angela signed the Operating Agreement that required her to "hold in confidence and not disclose or make use of any such Confidential Information," and to seek board approval for certain transactions [ECF No. 60-15 pp. 7, 18].  The parties dispute, however, whether Angela breached the Operating Agreement.  Specifically, Defendants argue that Angela never disclosed confidential information to Anthony or EPS or became involved in any discussion with customers about transferring VSI Sales jobs to EPS [ECF No. 59 pp. 14–15].  Plaintiffs disagree with Defendants' characterization of the events, arguing that Angela "transferred troves of documents belonging to VSI Sales and SUSA to herself for purposes having to do with the business of EPS" [ECF No. 73 p. 15].  Plaintiffs point to the Declaration of Robert Smook who attached as exhibits several emails and documents sent by Anthony and Angela to certain customers [ECF No. 78-5 pp. 120–51].  To this, Defendants respond that these emails and documents were simply transferred "in the course of business dealings on behalf of VSI and SUSA," adding that there is no evidence these documents were misappropriated [ECF No. 83 pp. 8–9].

An issue of fact exists as to whether Angela breached the Operating Agreement.  Summary judgment on Count 4 is denied.

### F.  Count 6 – Misappropriation and Conversion of Company Assets

In Count 6 of the Amended Complaint, Plaintiffs allege that Defendants misappropriated company assets by diverting and converting Plaintiffs' "customer information, orders, and payments" for their own benefit [ECF No. 24 ¶¶ 43–45].  Defendants claim that summary judgment must be granted because there is no evidence of conversion or misappropriation of Plaintiffs' confidential assets [ECF No. 59 p. 15].  Defendants also argue that Florida law does not recognize a conversion claim for the conversion of intangible assets [ECF No. 59 p. 15].

Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time.  *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman)*, 450 So. 2d 1157, 1160 (Fla. Dist. Ct. App. 1984) (citing *Star Fruit Co. v. Eagle Lake Growers*, 33 So. 2d 858 (1948)).  The essence of the tort is not the acquisition of the property; rather, it is the "wrongful deprivation of the property to the owner." *Star Fruit Co.*, 33 So. 2d at 860.  "Actions for conversion may properly be brought for a wrongful taking over of intangible interests in a business venture." *In re Corbin's Est*., 391 So. 2d 731, 733 (Fla. Dist. Ct. App. 1980)

Material issues of fact exist, however, with respect to Plaintiffs' claims for misappropriation and conversion of its customer lists, orders, and payments.  Construing all reasonable inferences in favor of Plaintiffs, a genuine issue of material fact exists as to whether Anthony and Angela misappropriated Plaintiffs' confidential assets or whether certain documents and orders were transferred in the ordinary course of business.  Accordingly, the Court will not grant summary judgment on Count 6 of the Amended Complaint for misappropriation and conversion of company assets.

### G.  Count 7 – Tortious Interference with Business and Contractual Relations

In Count 7 of the Amended Complaint, Plaintiffs allege that Defendants' diversion and conversion of Plaintiffs' customer information and orders constitute a tortious interference with the Plaintiffs' business and contractual relations [ECF No. 24 ¶¶ 46–48].  Defendants move for summary judgment, arguing that because Plaintiffs claims for misappropriation and conversion of company assets in Count 6 of the Amended Complaint must fail, Plaintiffs cannot establish any interference with a business relationship under Florida law [ECF No. 59 pp. 16–17].

Pursuant to Florida law, Plaintiffs must establish five elements to prevail on a claim for tortious interference with business and contractual relationships: "(1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant cause by the interference."  *Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005) (citing *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996)).

The Court finds that Defendants have failed to establish that no genuine issue of material fact exists with respect to Plaintiffs' tortious interference claim.  Genuine issues of material fact exist as to whether Angela and Anthony unjustly interfered with Plaintiffs' customers lists, orders, and payments for the benefit of EPS.  Accordingly, the Court will not grant summary judgment on Count 7 of the Amended Complaint for tortious interference with business and contractual relations.

### H.  Count 9 – Tortious Interference with Operating Agreement

In Count 9 of the Amended Complaint, Plaintiffs allege that Anthony and EPS "induced Angela DiSimone to breach her obligations under the Operating Agreement and tortiously

interfered with that agreement, including the obligations imposed upon her of confidentiality and with regard to transactions requiring special board approval" [ECF No. 24 ¶ 53]. Defendants move for summary judgment, arguing that Angela never breached the Operating Agreement, and that Plaintiffs therefore cannot succeed on a claim that Anthony and EPS tortiously interfered with a contractual relationship between Plaintiffs and Angela [ECF No. 59 p. 17].

Under Florida law, Plaintiffs must establish five elements to prevail on a claim for tortious interference with contractual relationships: "1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, [and] (5) Damages resulting from the breach." *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 545 (Fla. Dist. Ct. App. 1985) (alterations in original).

Here, as stated above, genuine issues of material fact exist as to whether Angela breached the Operating Agreement. The factual disputes regarding whether Angela committed a breach directly relates to the factual issues as to whether Anthony and EPS allegedly induced her to do so. As with Count 4 for breach of contract, the resolution of Count 9 must be decided by a jury. Summary judgment on Count 9 is denied.

## I. Accounting

In Count 12 of the Amended Complaint, Plaintiffs allege that they are entitled to a full accounting of "the amounts and values that these Defendants misappropriated from the Plaintiffs" because of Defendants' alleged misconduct and breach of fiduciary duties [ECF No. 24 ¶¶ 60–61]. To obtain an accounting under Florida law, a party must show either "(1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship." *Zaki*

*Kulaibee Establishment v. McFliker*, 771 F. 3d 1301, 1311 (11th Cir. 2014); *see also Armour & Co. v. Lambdin*, 16 So. 2d 805, 810 (1944) ("[I]t may be said generally that whenever there is a fiduciary relationship such as that of trustee, agent, executor, etc., the right to an accounting in equity is undoubted." (internal quotation marks omitted)).

Defendants believe that summary judgment is appropriate on Plaintiffs' accounting claim, because "Plaintiffs have already received information pertaining to these jobs in discovery in this case, and in the Defendants' expert witness report" [ECF No. 59 p. 18]. Plaintiffs do not dispute that Defendants have provided a full accounting but note that Defendants have not filed anything with the Court to support that they have provided all evidence [ECF No. 73 p. 17].

In light of the parties' representations regarding a full accounting, the Court will require the parties to submit a joint status report as to whether all expert reports and documents have been provided during discovery, and whether this issue is indeed moot. The Court therefore reserves ruling on whether summary judgment is warranted on Count 12.

### J. Counts 1 and 2 of Defendants' Counterclaims – Breach of Contribution Agreement and Indemnification

In Count 1 of Defendants' Amended Counterclaim, Defendants allege that Structures breached the Contribution Agreement by failing to make any effort to release Anthony and Angela from the personal guarantee that they made to Sabre [ECF No. 59 p. 5]. In Count 2, Defendants allege that Anthony and Angela are entitled to indemnification from VSI Sales for any amounts they paid to Sabre as a result of the judgment entered against them [ECF No. 57 ¶¶ 58–66].

It is undisputed that, although the parties were aware that VSI was obligated to pay Sabre, VSI Sales did not pay the obligation on or before the due date [ECF No. 65 ¶ 28]. Plaintiffs admit that they took no efforts to release Angela and Anthony from the obligation to Sabre [ECF No. 60 ¶ 86; ECF No. 78 ¶ 86]. As Plaintiffs explain it, during the merger and the creation

of the Contribution Agreement, VSI Sales provided a list of pending litigation and settlements, and "[a]lthough the Sabre settlement [was] disclosed, there [was] no disclosure of the personal guarantees of Mr. and Mrs. DiSimone" [*see* Declaration of John Roberts, ECF No. 78-1 p. 3 ¶ 9 (alteration added)]. Sandra Atkins, an employee of Structures, testified that Structures did not pay the Sabre guarantee, stating: "As I mentioned, we did not feel under obligation to pay this because they had put personal guarantees on it and that had to do with old business affairs" [ECF No. 78-16 p. 3:14–17]. Plaintiffs further argue that Structures took "commercially reasonable steps" to resolve the Sabre issue by attempting to renegotiate the settlement agreement in 2019 but did not have success [ECF No. 73 p. 18; *see* Declaration of John Roberts, ECF No. 78-1 p. 5 ¶ 20]. Plaintiffs also argue that, although no steps were taken to release Angela and Anthony from the Sabre settlement, Nova provided a loan of $150,000 to help pay the debt, a fact which Plaintiffs argue demonstrates accord and satisfaction with the terms of the Contribution Agreement [ECF No. 73 pp. 18–19].

Defendants dispute Plaintiffs' description of the resolution of the Sabre settlement. Specifically, Defendants argue that whether Structures was aware of the Sabre settlement at the time of closing is irrelevant because Structures was subsequently made aware of Angela and Anthony's personal guarantees in October 2018, which was two months before the December deadline to pay the Sabre debt [ECF No. 83 p. 3]. Defendants further argue that, although Angela and Anthony accepted a $150,000 loan from Nova, that did not constitute accord and satisfaction because Angela and Anthony refused to sign a settlement agreement with Structures to release Angela and Anthony's claims pertaining to VSI's Sabre obligation [ECF No. 83 p. 4].

The Court finds that genuine disputes of material fact remain as to Defendants' counterclaims for breach of contract and indemnification. The undisputed facts show that there

was some contractual relationship between Plaintiffs and Defendants regarding the release of personal guarantees as outlined in the Contribution Agreement and subsequent agreements to resolve those personal guarantees. Factual questions remain as to the terms of the parties' contractual relationship and whether those terms were breached. Summary judgment on Counts 1 and 2 of Defendants' Amended Counterclaim is not warranted.

### K. Defendants' Motion to Strike

Finally, attached to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment is the Declaration of Wesley Beeston [ECF No. 78-4], a financial advisor who helped negotiate the terms of the parties' Contribution Agreement in 2018. Defendants move to strike the Beeston Declaration, arguing that Beeston "was not identified in the Rule 26 Disclosure or in any of the Answers to Interrogatories in this case" [ECF No. 79 p. 3]. In response, Plaintiffs contend that "Beeston was clearly disclosed in discovery and in fact, Defendants[] asked witnesses at deposition about Beeston" [ECF No. 95 p. 5 (alteration added)]. Here, the Court determines that although Plaintiffs never formally disclosed Beeston as a witness, his non-disclosure is harmless. The Court has considered the parties' arguments but does not find them dispositive to resolution of the cross-motions for summary judgment. Defendants' Motion to Strike is therefore denied, with the clarification that the Court has not relied on the Beeston Declaration to adjudicate the issues raised on summary judgment.

### CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [ECF No. 59] is **GRANTED IN PART**.

2. Summary judgment is **GRANTED** in favor of Defendants as to Counts 1 and 2 of Plaintiffs' Amended Complaint.

CASE NO. 20-61119-CIV-CANNON/Hunt

3.   Summary judgment is **DENIED** as to Counts 3, 4, 6, 7, 9 and 12 of Plaintiffs' Amended

Complaint, and **DENIED** as to Counts 1 and 2 of Defendants' Amended Counterclaim.

4.   Plaintiffs' Motion for Summary Judgment [ECF No. 61] is **DENIED**.

5.   Defendants' Motion to Strike [ECF No. 79] is **DENIED** with the clarification stated in

this Order.

6.   **On or before 9 a.m. on February 8, 2022**, the parties shall submit a joint status report

advising the Court of the status of Plaintiffs' claim for Accounting in Count 12 of the

Amended Complaint.

7.   **On or before 9 a.m. on February 8, 2022**, the parties shall file the following renewed

pre-trial materials in light of this Order:

   a)   a joint pre-trial stipulation pursuant to Local Rule 16.1(e);

   b)   a joint exhibit list and a joint trial plan in accordance with the Court's templates
        available   at   https://www.flsd.uscourts.gov/content/judge-aileen-m-cannon
        (under "Civil Procedures" tab);

   c)   individually filed witness lists and deposition designations (and objections
        thereto and counter designations);

   d)   joint proposed jury instructions and verdict form.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 1st day of February

2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record